**UNITED STATES of America**

v.

**Petro HAWRYLUK.**

**Crim. No. 86–513.**

United States District Court,
E.D. Pennsylvania.

March 27, 1987.

unnecessary to consider Ranger's claim for indemnification.

Marsha McClellan, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

David Shapiro, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

On this prosecution, the defendant is charged in a superceding indictment with three counts of tax evasion for the tax years 1979–1981, 26 U.S.C. § 7201, and three counts of making and subscribing false income tax returns for those same tax years, 26 U.S.C. § 7206(1). I have before me certain discovery motions by the defendant, in which he challenges the sufficiency of the government's responses to his discovery requests under Fed.R.Crim.P. 16 and the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

### I. *Background*

A brief explanation of the circumstances of this case and the theory of the defense is necessary to understand the nature and necessity of the discovery requested. The defendant is 56 years old. He immigrated with his family to this country from Poland in 1948, and has minimal education. *See* Petro Hawryluk's Theory of Defense at 1. Defendant is the sole proprietor of Quality Roofing, a general roofing contractor. Defendant vigorously disputes that he ever intended to avoid payment of taxes on actual income or to file false returns;[1] and that he wilfully made and subscribed tax returns which he did not believe to be true.[2]

---

1. Under 26 U.S.C. § 7201, the government must establish that the defendant knew he had additional income which was unreported, and that the defendant knew there was a substantial tax due and owing.

2. In order to violate 26 U.S.C. § 7206(1), a defendant must intentionally violate a known legal duty to file a tax return which is true and correct. *See United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976). *See*

The government portrays this case as a straightforward situation of fraudulent under-reporting of income and underpayment of taxes. Defendant takes issue with the government's characterization of the case, and bases his defense on matters considered by the government to be immaterial. *See* Government's Memorandum of Law in Response to Defendant Petro Hawryluk's Motion for Production of Documents and Other Material at 6. Defendant advances the propositions as the main theories of his defense.

### A. *Extortion Payments*

Defendant claims that during the relevant years, substantial sums of money were extorted from him by the roofers union. In particular, defendant alleges that the roofer union required defendant "to make extortionate payments to Roofers Union officials to insure the contractor's physical safety, as well as for that of their employees, their property, the property of totally innocent customers, and other third parties." Petro Hawryluk's Theory of Defense at 8. Defendant also claims that he was required to pay union benefits[3] and salaries to the union for union members who did not work. *Id.* at 9. Defendant claims that the extortion payments were, in certain instances, related to particular roofing jobs, in other instances, the payments were not connected to particular jobs. *Id.* at 12. Defendant asserts that such payments entitle him to deductions as ordinary and necessary business expenses under 26 U.S.C. § 162.

Section 162(a) allows taxpayers to deduct in the calculation of income "all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Certain categories of payments, however, are excluded from deductible business expenses. Illegal payments to government officials are not deductible. 26 U.S.C. § 162(c)(1). In addition, section 162(c)(2) provides as follows:

Other illegal payments.—No deduction shall be allowed under subsection (a) for any payment ... made, directly or indirectly, to any person, if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment under any law of the United States, or under any law of a state ..., *which subjects the payor to a criminal penalty* or the loss of license or privilege to engage in a trade or business. (Emphasis supplied).

*See Raymond Bertolini Trucking Co. v. Commissioner of Internal Revenue,* 736 F.2d 1120, 1122 (6th Cir.1984) (kickback payments which do not subject payor to criminal sanction or loss of business privileges deductible under section 162(a)).

The Hobbs Act, 18 U.S.C. § 1951, makes extortion intended to obstruct, delay and or affect interstate commerce a crime against the United States. The Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Similarly in Pennsylvania, extortion is governed by 18 Pa.C.S.A. § 3923, which prohibits theft by extortion, *i.e.*, the intentional withholding of property of another by threatening, *inter alia*, to commit another criminal offense. *Id.* Nothing in either statute indicates that the payor would be subjected to criminal penalty or loss of a business license. Both statutes plainly envision that the victim of the extortion scheme will not be subject to criminal sanction therefor. Furthermore, the Pennsylvania prohibition of bribery only pertains to governmental or political matters, and is thus inapplicable here. 18 Pa.C.S.A. § 4701 *et. seq.*

■ Fundamentally, there is a difference in principle between illegal payments listed in section 162(c)(2), and the payment of extortion. Voluntary, willful payments intended to influence a decision of a public official or some other individual or to reward an individual for the performance of

---

*also, United States v. Doan,* 710 F.2d 124 (3d Cir.1983).

3. Defendant claims that he was required to pay between $10.00 and $14.00 per day for each union member listed to work for him to the union itself.

an official duty demonstrate a criminal intent which is absent when payments are coerced by the recipient. *Compare United States v. Goldman,* 439 F.Supp. 337 (D.N. Y.1977) (illegal payment of bribes not deductible as business expenses), *with United States v. Kahn,* 472 F.2d 272, 277–79 (2d Cir.1973) (extortion while not necessarily a complete defense to bribery, can negate criminal intent), *and United States v. Barash,* 365 F.2d 395, 401–02 (2d Cir.1966) (same). If the payments allegedly made were ordinary and necessary expenses of doing business *see Raymond Bertolini Trucking Co., supra,* and not illegal *to the payor,* 26 U.S.C. § 162(c)(2), then such payments would be deductible to the taxpayer. As such, they could offset certain taxes the government asserted the taxpayer owed, and could also be relevant to the issue of intent.

### B. *Conduit Theory*

Defendant's second theory of defense is that certain payments nominally made to him were in actuality payments to the roofers union. He alleges that, while certain bills were submitted under his letterhead and payments were made on those bills on many large roofing projects he was forced, by extortion, to allow the Union to perform the work and immediately sign over all payments to the union.[4] Petro Hawryluk's Theory of Defense at 8–11. Defendant did not report such payments as income on his tax returns because, he claims, he did not believe the money was income to him. *Id.* at 11–12.

█ Amounts of money received by a taxpayer under a claim of right to that money must be included in gross income. *North America Oil Consolidated v. Burnet,* 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). However, "amounts are not treated as income where the taxpayer does not receive the funds under a claim of right because the taxpayer is required to trans-

mit the funds to someone else as a mere conduit or agent." *Ball v. Commissioner of Internal Revenue,* T.C. Memo 1984–218 (April 25, 1984) [Available on WESTLAW, FTX–TCT database] (available on Lexis), 47 T.C.M. (C.C.H.) *aff'd,* 770 F.2d 1066 (3d Cir.1985). "The very essence of taxable income … is the accrual of some gain, profit or benefit to the taxpayer." *Commissioner of Internal Revenue v. Wilcox,* 327 U.S. 404, 407, 66 S.Ct. 546, 548, 90 L.Ed. 752 (1946), *quoted in Lashells' Estate v. Commissioner of Internal Revenue,* 208 F.2d 430, 435 (6th Cir.1953) (question whether taxpayer in fact received benefit of payments determines whether taxable as income to him).

█ In the instant case, if the defendant received payments from which he did not benefit, but rather the benefit accrued to another, then those payments would not be income to him, subject to taxation.[5] *Id.* Evidence which substantiated that such an arrangement in fact occurred here, and if so to what degree, would therefore be probative of which defendant understated his income for the years in question.

### c. *Forged Endorsements*

█ Finally, defendant claims that certain checks made out to him were never received by him. As a cash-basis taxpayer,[6] income is only taxable to defendant when it is received. Defendant claims that some of the checks upon which the government relied in reconstructing defendant's income were stolen and cashed with forged signatures. If so, then the funds those checks represented would not be taxable to the defendant.

### II. *Discovery Requested*

Two discovery motions by the defendant are now at issue: Motion of Defendant Petro Hawryluk for Production of Documents and Other Materials; and Motion

---

**4.** Defendant states that he did pay for materials, and was reimbursed from payments made to him even if on the Union's behalf.

**5.** For the purpose of determining taxability, the legality or illegality of a source of income is

irrelevant. *See Commissioner of Internal Revenue v. Tellier,* 383 U.S. 687, 691, 86 S.Ct. 1118, 1120, 16 L.Ed.2d 185 *supra.*

**6.** Petro Hawryluk's Theory of Defense at 15.

of Defendant Petro Hawryluk for Production of the Government's Witness List, or Copies of Each Trial Subpoena to be Issued by the Government and Impeaching Materials. Both motions are grounded in a single, extremely wide-ranging request for discovery materials. *See* Exhibit 1 to Defendant's Motion for Production of Documents (a nine page, single-spaced letter enumerating 19 specific discovery requests, some with many subparts). Many discovery issues remain disputed despite the efforts of counsel to agree on the paper scope of discovery.

I will not list, describe and analyze each disputed item, because I believe that the issues can be addressed effectively by discussing categories of requested discovery. Before I do that, however, it is important to recognize the general nature of the dispute. As I stated *supra,* the government believes that this case is a straightforward example of an individual who underreported his income, underpaid his taxes, and willfully swore falsely as to the accuracy of the tax returns he filed with the IRS. The government apparently further takes the position the defenses put forward by defendant in law are not defenses to the crimes charged. That being so, the government has apparently restricted the discovery provided to the defendant to items specifically obtainable pursuant to the minimum requirements of Fed.R. Crim.P. 16, *see* Note of the Advisory Committee to the 1974 Amendments, based on the theory that the only remaining defenses are (1) denial and reliance on the government's failing to meet its burden of persuasion, and (2) impeachment of government witnesses' credibility.

In assuming this restricted view, the government has provided the defendant with a significant quantity of discovery. The discovery already provided includes all copies of invoices from commercial and residential customers; all copies of checks or money orders or documents reflecting payment for work completed; any other miscellaneous documents between the defendant and customers; all documents available reflecting materials and other items purchased; and other document reflecting other of defendant's transactions.

Despite the substantial discovery produced, the government's overly restrictive view of the issues in this case has led it improperly to reject out of hand discovery requests and requests for exculpatory material based on the defenses raised. Those defenses raise myriad factual issues, and the government may well have Rule 16 and exculpatory material relating to those defenses. If the government does possess such Rule 16 and *Brady* material, it well knows both the obligation it has to produce that material to the defendant, and the risks it runs if it fails to do so. *See* Fed.R. Crim.P. 16(d).

The defendant too is not without his excesses. Defendant's requested discovery encompasses many items which are clearly not discoverable under any rule, statute or policy known to the court. The essence of defendant's request, taken as a whole, is that he should be entitled to discover the government's entire case, including Jencks Act material, all grand jury testimony, witness lists and attorney work product. While some such material may be available to defendant as exculpatory through *Brady,* that possibility does not warrant full disclosure of the government files prior to trial.

I now turn to particular categories of requested discovery. First, all Jencks Act material which is not exculpatory under *Brady, Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), is subject to disclosure according to the rule established in the Jencks Act, 18 U.S.C. § 3500, unless the government consents to earlier disclosure. Second, any evidence showing extortion by the roofers union against the defendant or his company would be corroborative of the allegations made in defense of the indictment, and hence exculpatory material subject to disclosure under *Brady.* Similarly, any documents supporting the specific allegations contained in ¶ 32 of the indictment in *United States v. Traitz,* Crim. No. 86–451

(E.D.Pa) as pertains to the defendant or his company would be exculpatory and subject to disclosure according to *Brady*. Third, impeachment evidence regarding witnesses and hearsay declarants should also be disclosed as exculpatory. Finally, the government is not required to produce its witness list or copies of trial subpoenas to the defendant, but must produce exculpatory material related thereto.

In allowing for appropriate discovery in accordance with this memorandum, all exculpatory material shall be produced to the defendant prior to the commencement of trial. All Jencks Act material shall be disclosed according to the provisions of that Act, unless the government consents to earlier release.

An appropriate order follows.

#### ORDER

AND NOW, this 27th day of March, 1987, it is hereby Ordered that defendant's motions for production of documents is GRANTED in part and DENIED in part; and defendant's motion for production of the government's witness list or copies of each trial subpoena to be issued by the government and impeaching information is GRANTED in part and DENIED in part. The government shall produce the discovery required in the accompanying Memorandum as follows: all exculpatory material shall be produced to the defendant before the commencement of trial; all Jencks Act material shall be produced as required by that Act, unless the government consents to earlier production.

AND IT IS SO ORDERED.