T. D. McCORMICK CONTRACTING CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
T.D. McCormick Contracting Co. v. Commissioner
Docket Nos. 7933-86; 34846-86.
United States Tax Court
T.C. Memo 1988-365; 1988 Tax Ct. Memo LEXIS 394; 55 T.C.M. (CCH) 1522; T.C.M. (RIA) 88365; August 10, 1988. Sidney Eagle, for the petitioner. *395 Kevin M. Flynn, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in, and additions to, petitioner's Federal income taxes as follows: Addition to Tax
Taxable Year Ended
Deficiency
[1] Sec. 6653(b) March 31, 1971
$ 31,370.00
$ 17,836.00
March 31, 1972
36,036.00  23,025.00  March 31, 1973
59,791.00  32,915.00  March 31, 1974
29,848.00  14,924.00  March 31, 1975
50,672.00  33,566.00  March 31, 1976
86,722.00  43,361.00  The issues for decision are (1) whether certain payments [2] by petitioner were properly includable in purchases, and consequently, in cost of goods sold, or were otherwise deductible as ordinary and necessary business expenses under section 162(a) or nondeductible under section 162(c)(2), and (2) whether, if petitioner is found to have underpaid its *396 taxes for the taxable years at issue, such underpayments were due to fraud within the meaning of section 6653(b). [3] In point of fact, if we find no fraud, the years in question are barred under section 6501 and resolution of issue (1) becomes unnecessary. However, since both issues are intertwined, we have decided, in the interests of clarity, to deal first with the issue of deductibility. For convenience, we have combined our findings of fact and opinion. Petitioner, T. D. McCormick Contracting Co., Inc., is a New York corporation that had its place of business in Bronx, New York, during the years at issue. It was a construction firm in the *397 business of erecting, installing, and repairing boilers. At the time it filed its petitions herein, petitioner's address was c/o of Thomas D. McCormick, 108 Sill Lane, Old Lyme, Connecticut. Petitioner was founded by Thomas D. McCormick (McCormick) in 1944. McCormick was president and sole stockholder of petitioner from 1944 to 1971. John Dapcich (Dapcich) became an employee of petitioner in 1946. He became vice president of petitioner in 1960 and president in 1971, at which time he became a 50-percent stockholder of petitioner. At the same time in 1971, McCormick became chairman of the board of directors and treasurer of petitioner. During the taxable years at issue, Dapcich engaged in check-cashing activities with the cooperation of third parties. Such activities were carried on by Dapcich on behalf of petitioner and had as their purpose the generation of cash to be used by petitioner to make payments to one George Boylan (Boylan) who was the business manager of the International Brotherhood of Boilermakers Union, Local No. 5, AFL-CIO (the union) and was responsible for the assignment of workers to petitioner's construction activities. Dapcich had known Boylan since the *398 early 1960s. The purpose of these payments was to facilitate the hiring of workers through the union hall, which petitioner was required to do, and to maintain good relations with the union, i.e., to insure labor peace, thereby enhancing the ability of petitioner to maintain and expand its business. The checks were made out to payee companies, many of whom had no assets and none of whom supplied or caused to be supplied to petitioner anything of value in return either by way of goods or services. The cooperating third parties supplied Dapcich with blank invoices. Dapcich prepared the language to be typed on the invoices describing the goods or services purportedly acquired by petitioner. His secretary then typed the invoices, an interoffice stamp was placed on each invoice showing that the bill was paid, and a check in the indicated amount issued. The original invoice was placed in the "bills paid" folder maintained by petitioner. Each month, petitioner's accountant posted the invoices in the "bills paid" folder in petitioner's purchases and cash disbursements journal. The accountant reviewed only the descriptive language of the invoices and their mathematical accuracy; he *399 made no inquiry as to whether petitioner actually obtained the goods or services described. The accountant prepared petitioner's Federal income tax returns for the years at issue and included the amount paid in respect of the invoices prepared by Dapcich to generate cash in purchases and hence in cost of goods sold reported on those returns. The cooperating third parties who assisted Dapcich in the check-cashing activities returned 80 to 85 percent of the face amounts of the checks in cash to Dapcich. The parties have stipulated that "The cash [so] generated * * * was paid to Boylan by Dapcich." [4]
McCormick was aware of these payments and signed some of the checks generating the cash with which such payments were made. We deal first with the issue of the deductibility of the amounts in question and/or their includability in purchases. Section 162(c)(2) provides as follows: (2) Other Illegal Payments. -- No deduction *400 shall be allowed under subsection (a) for any payment * * * made, directly or indirectly, to any person, if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment under any law of the United States, or under any law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business. * * * The burden of proof in respect of the issue, for purposes of this paragraph, as to whether a payment constitutes an illegal bribe, illegal kickback, or other illegal payment shall be upon the Secretary to the same extent as he bears the burden of proof under section 7454 (concerning the burden of proof when the issue relates to fraud). The Federal statute, which was in effect during the years in issue and therefore applies to the transactions between Dapcich and Boylan, is 29 U.S.C. section 186(a) (1982), which provides as follows: (a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer *401 to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value -- * * * (4) To any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization. Before 1984 and during the years at issue, a conviction for willful violation of this provision carried with it "a fine of not more than $ 10,000 or to imprisonment for not more than one year, or both." 29 U.S.C. section 186(d) (1982). There is clear and convincing evidence in the record herein that Dapcich made the payments "with intent to influence [Boylan] in respect to his actions, decisions or duties as a representative of" the union. [5] The payments to Boylan were therefore in violation of 29 U.S.C. section 186(a) and petitioner could have been convicted under 29 U.S.C. section 186(d). See United States v. Carter,311 F.2d 934, 941-944 (6th Cir. 1963); United States v. Annunziato,293 F.2d 373, 379-380 (2d Cir. 1961). *402 We reject petitioner's argument that Boylan was "extorting" these sums from petitioner and therefore petitioner would not be subject to criminal penalty for the payments made to Boylan with the result that the payments were properly deductible. In the first place, we are convinced that Dapcich was a willing participant on behalf of petitioner in the transactions with Boylan and that he was far from "an unwilling or reluctant person" [6] in making the payments in question. See United States v. Carter, supra at 944. In the second place, 29 U.S.C. section 186 makes no exception for extortion. Even if we were to find that Boylan practiced extortion [7] on Dapcich, the maximum impact that extortion might have would be as one element in determining the existence of the requisite intent on the part of Dapcich. Cf. United States v. Kahn,472 F.2d 272, 277-279 (2d Cir. 1973); United States v. Barash,365 F.2d 395, 401-403 (2d Cir. 1966). Based upon the record herein, it would not be sufficient to tip the scale in petitioner's favor. *403 The cases relied upon by petitioner are simply not in point. Arroyo v. United States,359 U.S. 419 (1959), held that the subsequent embezzlement of funds legally paid to an employee representative was not a crime within the ambit of 29 U.S.C. section 186. In Raymond Bertolini Trucking Co. v. Commissioner,736 F.2d 1120 (6th Cir. 1984), revg. a Memorandum Opinion of this Court, respondent conceded the legality of the payments and that they were "necessary" expenses; the only issue was whether the cash payments constituted "ordinary" expenses. See also Car-Ron Asphalt Paving Co. v. Commissioner,758 F.2d 1132 (6th Cir. 1985), affg. a Memorandum Opinion of this Court. The only reference to extortion in C. F. Malanka and Sons, Inc. v. Commissioner,T.C. Memo. 1979-187, affd. without published opinion 661 F.2d 913 (3d Cir. 1981), is with respect to another case in which certain Newark, New Jersey, officials were convicted of conspiracy to extort kickbacks from contractors doing construction work for the city. See United States v. Addonizio,451 F.2d 49 (3d Cir. 1971). *404 We did not rely on that other case or its underlying facts (except to the limited extent that the defendants therein had been convicted and the convictions affirmed) and, with one exception, found that payments pursuant to a scheme for utilizing false invoices similar to the scheme involved herein were nondeductible illegal kickbacks and furthermore that an addition to tax for fraud under section 6653(b) based upon the reflection of such scheme in the taxpayers' returns. Concededly there is some language in United States v. Hawryluk,658 F. Supp. 112, 114-115 (E.D. Pa. 1987), which tends to support petitioner's contention as to "extortion," but that case involved pre-trial discovery, not a final disposition, and, in any event, we disagree with the thrust of the above-cited portion of the district court's opinion. We hold that respondent has carried his burden of proof [8] that the payments in question were made in violation of 29 U.S.C. section 186(a)(4) and are therefore not deductible under sections 162(c)(2) nor properly included in purchases. [9]
*405 We turn now to the issue involving the additions to tax for fraud under section 6653(b). That issue is one of fact and the burden is on the respondent to establish, by clear and convincing evidence, actual and intentional wrongdoing on the part of petitioner encompassing acts designed to evade a tax believed to be due and owing; although fraud may never by imputed or presumed, it can be found to exist is on the basis of an evaluation of the entire record. Estate of Spruill v. Commissioner,88 T.C. 1197, 1241-1242 (1987). The existence of fraud may be found in the taking of improper deductions or offsets. Neaderland v. Commissioner,52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). In the instant case, it is clear that petitioner took improper deductions or made improper adjustments for the payments in question. It is also clear that petitioner's actions were taken at the instance of Dapcich (with the knowledge of McCormick) [10] who realized that the payments would not be deductible and sought to conceal the true nature of the payments by the use of cash, false invoices, and the device of burying the amounts involved in *406 purchases and hence increasing the cost of goods sold with a consequent reduction in gross income. The pattern of fraud is thus established beyond any doubt. Accordingly, we hold that respondent has carried his burden of proof and sustain the additions to tax under section 6653(b). [11]
Decisions will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue, and, unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The amounts of the payments are not in dispute. ↩
3. In the notice of deficiency, respondent disallowed deductions for depreciation, customer entertainment and bad debts, and reduced petitioner's investment tax credit. In its petition, petitioner contested these determinations, but it introduced no evidence at trial and did not press the issues on brief. We therefore deem them to be conceded. We note, in any event, that petitioner bears the burden of proof with respect to these items, Rule 142(a), and it has not met that burden. ↩
4. There is some testimony in the record that only 70 percent of the cash returned to Dapcich was paid to Boylan and that the remaining 30 percent was used to make payments to persons working at the various construction sites. See note 8, infra.↩
5. Dapcich had died prior to the trial herein, but his testimony before a grand jury and his statement to Robert Palka (Palka), a special agent of respondent, on Nov. 16, 1977, was stipulated by the parties and the contents of that testimony and statement were corroborated by the testimony of Palka. Petitioner objected to Palka's testimony at trial but did not pursue its objections on brief. In any event, Palka's testimony as to what Dapcich said to him constitutes admissions or declarations against interest and consequently is admissible under Rules 801(d)(2) and 804(b)(3) of the Federal Rules of Evidence. See also C. F. Malanka and Sons, Inc. v. Commissioner,T.C. Memo. 1979-187, affd. without published opinion 661 F.2d 913↩ (3d Cir. 1981).
6. See the definition of "extort" in Webster's Third New International Dictionary 806 (1981). ↩
7. Boylan was convicted of violating 29 U.S.C. sec. 186(b) (making unlawful a request demand, etc. for money or other thing of value) in respect of transactions with petitioner. See United States v. Boylan,620 F.2d 359↩ (2d Cir. 1980). 8. We note that there is some evidence in the record that not all the cash returned to petitioner was paid to Boylan. To the extent that cash was used to make other payments, the petitioner bears the burden of proof that they were proper deductions. Rule 142(a). The record herein is totally inadequate in light of the admission by Dapcich that some of the cash found its way into his pocket. ↩
9. See Terminal Equipment Corp. v. Commissioner,T.C. Memo. 1955-132↩. We note that, in any event, the payments could not properly be includable in purchases because petitioner never obtained any goods in exchange therefor. 10. McCormick had also died prior to trial but his testimony before the Boylan grand jury was stipulated by the parties. ↩
11. Cf. Greater Display & Wire Forming, Inc. v. Commissioner,T.C. Memo. 1988-231; C. F. Malanka and Sons, Inc. v. Commissioner, supra↩ note 5.