**RAYMOND BERTOLINI TRUCKING COMPANY, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 83–1238.

United States Court of Appeals, Sixth Circuit.

Argued April 5, 1984.

Decided June 21, 1984.

---

Samuel Goldman (argued), James E. Davis, Akron, Ohio, for petitioner-appellant.

Kenneth W. Gideon, Chief Counsel, I.R.S., Glenn L. Archer, Jr. (Lead Counsel), Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen (argued), Melvin E. Clark, Jr., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before KENNEDY and CONTIE, Circuit Judges, and PECK, Senior Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Petitioner Raymond Bertolini Trucking Company (RBTC) appeals the Tax Court's decision affirming the Commissioner's disallowance of RBTC's deduction of certain lawfully made kickback payments as ordinary and necessary business expenses, under I.R.C. § 162(a).[1] We reverse the Tax Court's decision and find that petitioner was entitled to take these deductions.

RBTC is an Ohio corporation based in Akron. RBTC became a subcontractor at a large shopping mall construction site in Akron under the primary contractor, Forest City Enterprises, Inc. (Forest City) when the previous subcontractor defaulted. Mr. Nicholas Festa, Forest City's supervisor at the site, awarded RBTC the subcontract, which was up to that time the largest job that RBTC had undertaken. RBTC was to bill Forest City on an hourly basis for use of equipment and personnel. In the course of carrying out the subcontract, RBTC's weekly payroll soared from $5000 to $30,000, and the company had to make monthly payments on $200,000 worth of equipment purchased during this time to perform the subcontract.

Sometime after RBTC began invoicing its bills to Forest City, Mr. Festa approached Mr. Bertolini, RBTC's president, to solicit him to make "kickback" payments to Mr. Festa out of the payments received from Forest City. Mr. Bertolini understood Mr. Festa to mean that RBTC would not be allowed to continue the subcontract work and would not be timely paid if the kickbacks were not forthcoming. Mr. Bertolini agreed to make the payments.

RBTC did additional subcontract work on a site adjacent to the mall on a bid subcontract basis. All of these subcontracts were signed by Mr. Festa and were conditioned on RBTC making kickback payments.

During RBTC's taxable year ending September 30, 1976, it paid Festa (or others for Festa's benefit) $44,500 in seven payments. In fiscal 1977, such payments totalled $90,-

---

1. T.C.M. (P–H) ¶ 82,643 (1982).

071.91. The individual payment amounts bear no particular relation to the amounts paid by Forest City to RBTC. RBTC later made out a note payable to Festa for $30,000, which petitioner paid in installments. In making these payments, RBTC did not violate either Ohio State law or federal law, and was not by virtue of the payments subject to loss of any license or privilege to engage in its trade.

RBTC deducted its payment of $44,500 to Festa from its income in its taxable year ending September 30, 1976, as "Subcontract-Construction." In its taxable year ending September 30, 1977, RBTC reported $82,571.91 paid to Festa as "Commissions and Fees to Nonemployees" on its 1099 form. Petitioner later filed another 1099 for the payments made to Festa on the $30,000 note. The Commissioner disallowed these deductions on the ground that they were not "ordinary" within the meaning of § 162(a). Section 162(a)[2] provides:

> In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business ....

Illegal bribes or kickbacks may not be deducted, under I.R.C. § 162(c)(1). Congress amended the statute in 1969,[3] adding § 162(c)(2), which was revised in 1971.[4] Subsection (c)(2) now provides, in part:

> Other illegal payments.—No deduction shall be allowed under subsection (a) for any payment ... made, directly or indirectly, to any person, if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment under any law of the United States or under any

law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business.[5]

The Treasury promulgated Treas.Reg. § 1.162–1, which provides, in part:

> A deduction for an expense paid or incurred after December 30, 1969, which would otherwise be allowable under section 162 *shall not be denied on the grounds that allowance of such deduction would frustrate a sharply defined public policy.*

(Emphasis added)

The statute and regulations thus set out a scheme under which a taxpayer may deduct as a business expense any expenditure which is ordinary and necessary, and legally made, and the Commissioner may not disallow a deduction on public policy grounds. There is no dispute here that petitioner's kickback payments were made legally, and the Commissioner concedes that the payments were necessary. Thus the only question before us is whether the payments were ordinary, within the meaning of I.R.C. § 162(a).

Petitioner and the Commissioner advocate two distinct views of the meaning of "ordinary" in the statute. The Commissioner promotes the view that "ordinary" means "normal" or "habitual." Petitioner advances the view that the word "ordinary" is in the statute simply to distinguish between expenditures which are ordinary, i.e., currently deductible, and those which must be capitalized and deducted over the life of the asset or benefit acquired. There

---

**2.** Many of the cases discussed in this opinion arose under the 1939 Code, § 23(a)(1), which contained the same language as § 162(a) of the 1954 Code.

**3.** Tax Reform Act of 1969, Pub.L. No. 91–172, § 902(c)(2), 83 Stat. 710 (1969).

**4.** Revenue Act of 1971, Pub.L. No. 92–178, § 310(a)(1), 85 Stat. 525 (1971) (with respect to payments after Dec. 30, 1969).

**5.** The amendment legislatively reversed *Commissioner v. Heininger,* 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943), in which the Court had denied a deduction for attorney's fees for an unsuccessful defense of illegal activity as not ordinary, because contrary to public policy. *Cf. Lilly v. Commissioner,* 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769 (1952) (kickbacks from opticians to ophthalmologists made at standard rate on national basis allowed as ordinary and necessary business expenses; public policy standard not appropriate).

is apparently no meaningful legislative history on this point,[6] though the phrase "ordinary and necessary" has been with us to delimit allowable business expense deductions since 1909.[7]

The Commissioner cites *Deputy v. du Pont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940), for his view:

> Ordinary has the connotation of normal, usual, or customary. To be sure, an expense may be ordinary though it happen but once in the taxpayer's lifetime. Yet the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved.

*Id.* at 495, 60 S.Ct. at 367 (citations omitted). *See also Welch v. Helvering*, 290 U.S. 111, 113, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933) (ordinary has "strain of constancy" but is "affected by time and place and circumstance"); *United Draperies, Inc. v. Commissioner*, 340 F.2d 936 (7th Cir.1964) (kickbacks not ordinary means of securing business in trailer manufacturing business).

This is the interpretation of "ordinary" which the Tax Court followed in deciding RBTC's case here. The court stated:

> [I]n the absence of any proof whatsoever that the payments made by Mr. Bertolini to Mr. Festa were in any way customary or normal in the dumping or excavating industry, we must hold that such payments were not "ordinary" within the meaning of section 162(a) and therefore are not deductible thereunder.

The leading case for the view that petitioner propounds is *Commissioner v. Tellier*, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966), in which Justice Stewart wrote:

> The principal function of the term "ordinary" in § 162(a) is to clarify the distinction, often difficult, between those ex-

penses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset.

*Id.* at 689–690, 86 S.Ct. at 1119–1120. *See also Commissioner v. Lincoln Savings and Loan Assoc.*, 403 U.S. 345, 354, 91 S.Ct. 1893, 1899, 29 L.Ed.2d 519 (1971); *Mason Dixon Lines, Inc. v. United States*, 708 F.2d 1043, 1046 (6th Cir.1983); *NCNB Corp. v. United States*, 651 F.2d 942, 948 (4th Cir.1981); *Colorado Springs National Bank v. United States*, 505 F.2d 1185, 1192 (10th Cir.1974); *Bayou Verret Land Co. v. Commissioner*, 450 F.2d 850, 858 (5th Cir. 1971).

█ An expenditure is ordinary if it is a current expense. The Supreme Court so held in *Tellier*, and we followed that decision in *Mason Dixon Lines*, in which we examined the deductibility of "liquidated damage" penalties for operating a vehicle with weight in excess of statutory limits:[8]

> The Supreme Court has set out the proper approach when claimed deductions are denied by the IRS because the deducted expenses have some relation to violations of law by the taxpayer. A court should determine first whether the expenditures come within the literal requirements of § 162(a). This test is satisfied if the expenses are incurred in connection with a business and if they are ordinary and necessary. *The significance of ordinary is to distinguish between capital expenditures which must be amortized if deductible at all and expenditures for current operations of the business. * * * Commissioner v. Tellier, supra,* 383 U.S. at 689, 86 S.Ct. at 1120, *quoting Welch v. Helvering*, 290

---

6. *See* Wolfman, *Professors and the "Ordinary and Necessary" Business Expense*, 112 U.Pa.L. Rev. 1089, 1092 n. 15 (1964).

7. Tariff Act of 1909, ch. 6, § 38, 36 Stat. 113 (1909).

8. We reversed and remanded, finding that the District Court had improperly considered the question of whether the liquidated damages could have been easily avoided.

U.S. 111, 113, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933).

708 F.2d at 1046.[9]

Similarly, the court in *NCNB Corp.*, having found the taxpayer's expenditures to have been necessary, said:

> The question, therefore, is to what extent, if at all, the expenditures were also "ordinary," *i.e.*, were current, were part of the cost of producing the income which is reported on the disputed income tax returns. It is a matter of timing, the selection of the proper tax year or years against whose revenues the expenditures should be set off.

651 F.2d at 948.

■■■■ We believe that the confusion regarding the meaning of "ordinary" stems from the fact that the two views advanced here are both to a certain extent correct, and are not mutually exclusive. *See Tulia Feedlot, Inc. v. United States*, 513 F.2d 800 (5th Cir.), *cert. denied*, 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975). Whether an expenditure is "normal" or "habitual" is a criterion to be used in determining whether it is currently deductible, or whether it must be capitalized. An expenditure may be extraordinary and unusual because it is a purchase of an asset requiring an unusually large cash outlay, or because the expenditure was occasioned by an extraordinary disaster. These will generally be capital, or non-ordinary expenditures.

The interrelation between the question of what is "normal" or "habitual" and what is currently deductible is illustrated in *Welch*, cited by both parties here. In that opinion Justice Cardozo wrote:

> Now, what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often.

A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. Nonetheless, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack.

290 U.S. at 113–14, 54 S.Ct. at 8–9. The opinion then goes on to discuss whether the expenditures in question in that case, the taxpayer's payment of the debts of his corporation after discharge in bankruptcy, were ordinary expenses, or, as the Commissioner found, "rather in the nature of capital expenditures, an outlay for the development of reputation and good will." *Id.* at 113, 54 S.Ct. at 8. Justice Cardozo wrote these lines which are eminently quotable, but which give judges and tax lawyers little guidance on the question of what is ordinary:

> One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must apply the answer to the riddle.

*Id.* at 115, 54 S.Ct. at 9. In his next sentence, however, Justice Cardozo concluded:

> The Commissioner of Internal Revenue resorted to that standard ["life in all its fullness"] in assessing the petitioner's income, and found that the payments in controversy *came closer to capital outlays than to ordinary and necessary expenses in the operation of a business.* ... *[T]he tax must be confirmed.*

*Id.* (emphasis added).

The central issue in *Welch* was thus whether the expenditure should have been deducted currently or capitalized; the question of whether the expenditure was "nor-

---

**9.** In *Diggs v. Commissioner,* 715 F.2d 245, 249 (6th Cir., 1983), we said, "[business] expenses must also be 'ordinary' or 'normally to be expected in view of circumstances facing the business.'" This is not inconsistent with *Tellier* or *Mason Dixon,* or our decision here, as we find that the question of whether an expenditure is "normal" is pertinent to whether or not it may be currently deductible; it is simply not the entire question in determining whether an expense is ordinary.

mal" is a tool for getting at this prime question.[10]

■ This is not to say that the question of whether an expenditure is "normal" or "habitual" is of no moment. We recognize that there are cases in which an expenditure may be so abnormal as not to be logically connected to the taxpayer's particular business at all and so not be a deductible business expense. *Deputy v. du Pont, supra,* cited by the Commissioner for his interpretation of "ordinary," is such a case. In *du Pont* the Court affirmed the Commissioner's denial of a deduction of carrying charges on the taxpayer's short sale of securities, because the taxpayer was not in the business of trading securities, but rather in the business of "conserving and enhancing his estate." 308 U.S. at 493, 60 S.Ct. at 366. *du Pont* thus stands for the proposition that there must be some normal, logical connection between a taxpayer's particular business and the expenditure for it to be deductible.[11] There is obviously such a relationship between RBTC's construction business and the kickback payments which it made in order to retain its construction contracts, and so under *du Pont* the payments are ordinary and deductible.

This Court does not condone kickback arrangements any more than do the Commissioner and the Tax Court. This case is somewhat aberrant, because in most of our country payments such as those made by petitioner are illegal and consequently not deductible. But a legal kickback is a cost of doing business like any other—an indispensable one here—and Congress has written the tax laws so as to allow deductions for such costs so long as the payments made are within the bounds of federal and state law. As the Court said in *Tellier:*

> We start with the proposition that the federal income tax is a tax on net income, not a sanction against wrongdoing. That principal has been firmly imbedded in the tax statute from the beginning. * * * With respect to deductions, the basic rule, with only a few limited and well-defined exceptions, is the same.

383 U.S. at 691, 86 S.Ct. at 1120. *See also United Draperies, Inc. v. Commissioner,* 340 F.2d 936, 938 (7th Cir.1964) (Knoch, J., dissenting); Griswold, *supra* note 11. Parenthetically, we note that allowing the payments as deductions here may be wise tax policy, since the deduction by the payor may on audit reveal income tax evasion on the part of the recipient if he fails to report the payment, as apparently occurred here in the case of Mr. Festa.

■ The Commissioner does not argue here that petitioner's payments are capital in nature rather than current expenses, nor does he argue that the expenses were not connected with petitioner's business. He concedes that the expenditures were necessary. Accordingly, petitioner has fulfilled the requirements of § 162(a). The Commissioner may not disallow the deduction here on policy grounds, for Congress and the Treasury, by enacting I.R.C. § 162(c)(2) and promulgating Treas.Reg. § 1.162–1, ended any ambiguity regarding the deductibility of current business expenses such as legal kickbacks. We find that the Tax Court applied an erroneous legal standard to the facts of this case, and find that under the correct standard petitioner's payments were ordinary and necessary business expenses and were properly deducted under § 162(a).

**10.** *See* Wolfman, *supra* note 6, at 1096: "[T]he essence of the analysis [of *Welch v. Helvering*] is in its attempt to isolate the capital expenditure from the current."

**11.** *Cf.* Griswold, *An Argument Against the Doctrine that Deductions Should Be Narrowly Construed as a Matter of Legislative Grace,* 56 Harv. L.Rev. 1142, 1146 (1943), in which Dean Griswold argues that the deduction should have been allowed, as the court did not intimate that the transactions were entered into for any reason except a *bona fide* business purpose. He states, "It would seem ... that the word 'ordinary' in the statute was designed to eliminate expenditures which should be capitalized, and that it should take a clearer indication than that in the statute to lead to the conclusion that Congress intended to disallow legitimate business expenses." *Id.*

The judgment of the Tax Court is reversed.