UNITED STATES of America,
Plaintiff–Appellee,

v.

Bill LEW, Defendant–Appellant.

No. 88–1025.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Decided May 12, 1989.

Donald M. Re and Mona C. Soo Hoo, Donald M. Re, P.C., Los Angeles, Cal., for defendant-appellant.

Sanford Svetcov, Chief, Appellate Section, and Rodolfo M. Orjales, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before FARRIS, BOOCHEVER and HALL, Circuit Judges.

BOOCHEVER, Circuit Judge:

After a jury trial Bill Lew, an immigration attorney, was convicted of six counts of mail fraud under 18 U.S.C. section 1341 and five counts of making false statements to the United States Department of Labor (DOL) under 18 U.S.C. section 1001. He argues that under *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the evidence was insufficient to support his conviction on the mail fraud counts. He also argues that the district court improperly allowed the introduction of evidence of other misconduct, limited his cross-examination of key witnesses, and allowed the introduction of testimony which resulted in improper vouching for the credibility of government witnesses.

## BACKGROUND

Each of counts eight through sixteen of the superseding indictment alleged that Lew misrepresented to the DOL on a Form–750 that a company was engaged in a particular business and would employ a particular person when in fact Lew knew the company was not engaged in the business and would not legitimately employ the person. Lew was convicted on five of these counts. Each of counts one through seven of the superseding indictment alleged that, in connection with a scheme to defraud, Lew placed in the mail a DOL Form–750 on behalf of a particular alien. Lew was convicted on six of these counts.

A DOL Form–750 is an "Application for Alien Employment Certification." The form is signed by an employer and states that the employer will hire a particular alien for a particular position. Aliens seek employment certification from the DOL to facilitate obtaining permanent resident status from the Immigration and Naturalization Service (INS). To obtain DOL certification, an employer must first demonstrate that legal residents of the United States are not available to fill the position. If the DOL determines that the employer has exhausted the United States labor market, certification is approved. If DOL certification is obtained the employer can then seek permanent resident status for the alien by filing a form with the INS.

Joshua Chang referred approximately fifty alien clients to Lew. Lew would typically question the alien about his or her background. Often Chang would translate. Chang sometimes used two corporations with which he was affiliated, Hundred Deers Company and Shing Chi International, to facilitate obtaining DOL certification for Lew's clients. On other occasions a new company would be established to serve as the employer. After meeting with the aliens, Lew would prepare and mail DOL Forms–750 on behalf of the employers, tailoring the job requirements to the backgrounds of Lew's alien clients. After obtaining labor certification, Lew would have his secretary prepare immigration forms. Lew's secretary testified that sometimes Lew would tell her to put information on the forms that was different from the information the employer had provided.

Joshua Chang was indicted along with Lew. He testified at Lew's trial that he had agreed to testify truthfully and cooperate as part of a plea agreement.

## DISCUSSION

## I. MAIL FRAUD

██ Lew argues that there is no evidence that he obtained the money from his clients by defrauding them, and thus his conviction must be reversed under *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The government responds that its theory of the case was that "the principal object of the mail fraud scheme was to defraud Lew's clients of the attorneys fees they paid him." The government also asserts that "the undisputed facts are that aliens paid Lew a fee for advice and assistance from him" and "they were deceived into believing that they could lawfully become permanent residents through Appellant's scheme."

The government, however, has been unable to refer us to, and we have been unable to find, *any* evidence in the record that Lew deceived his clients. Furthermore, a requested jury instruction that would have required a finding that Lew deceived his clients was denied. Lew argued that such an instruction was necessary because "mail fraud requires a relationship between the falsity and the collection of the money." Instead the jury was instructed that the "scheme was to make false statements to the United States for the purpose of obtaining money from defendant's clients."

In *McNally* the defendants were state political leaders who designated a particular company to provide insurance policies to the state. In return, this company provided monetary kickbacks to companies in which the defendants held interests. 483 U.S. at 351–54, 107 S.Ct. at 2877–78. The fraud alleged was a failure to disclose to the state the state officials' financial interests in these transactions. Such a fraud was not sufficient to sustain a conviction under the mail fraud statute, because only the government was deceived and the mail fraud statute does not protect the intangi-

ble right to good government. 483 U.S. at 358–62, 107 S.Ct. at 2881–82.

The government attempts to distinguish this case from *McNally* by arguing that in *McNally* the Court simply limited the mail fraud statute to schemes designed to obtain money or property, holding that depriving the government of its right to have its affairs conducted honestly was insufficient to constitute a violation of the mail fraud statute. The government contends that after *McNally* the elements of mail fraud remain unchanged, except that the intent of the scheme must be to obtain money or property. Thus, the government argues, even if misrepresentations were not made to the clients, the conviction should be sustained because Lew obtained money.

While it is true that after *McNally* the elements of mail fraud remain unchanged except that the intent of the scheme must be to obtain money or property, the Court made it clear that the intent must be to obtain money or property from the one who is deceived: "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" 483 U.S. at 358, 107 S.Ct. at 2880–81 (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)).

This case is indistinguishable from *McNally*. In *McNally*, as here, the defendants did obtain money in connection with the wrongdoing toward the government. The missing element in *McNally* was that the money was not received from the party deceived—the government. In *United States v. Bonallo*, 858 F.2d 1427 (9th Cir. 1988), a bank employee was convicted of bank fraud for making automatic teller withdrawals and then altering the computer records so that the withdrawals would be charged to the accounts of other customers rather than his own. *See id.* at 1432. One of Bonallo's arguments on appeal was that, while it was the bank that was deceived, the intent was to obtain mon-

ey from bank customers who were charged, not the bank, and thus there was no intent to defraud the bank. *Id.* at 1434 n. 9. The court responded that because banks reimburse the accounts of customers who are wrongly charged, Bonallo was effectively harming the bank when he altered the records. *Id.* Thus, *Bonallo* contained the element that was missing in *McNally* and in the case at bar: an intent to obtain money or property from the victim of the deceit. *See also United States v. Mitchell,* 867 F.2d 1232, 1233 (9th Cir.1989) (reversing mail fraud conviction because "[a]lthough both indictments alleged a scheme to obtain money and property, neither alleged a scheme to obtain them from the governmental body" which was deceived); *United States v. Egan,* 860 F.2d 904, 909 n. 2 (9th Cir.1988).

In *McNally,* on appeal the government asserted that misrepresentations *were* made to the company from whom the money was received. Here the government claims that misrepresentations were made to Lew's clients. However, there as here "there was nothing in the jury charge that required such a finding." *McNally,* 483 U.S. at 361, 107 S.Ct. at 2882. Because the jury instructions permitted conviction for conduct not within the reach of section 1341, the convictions on the mail fraud counts must be reversed.

## II. OTHER MISCONDUCT EVIDENCE

A judge's determination to admit "other crimes" evidence is reviewed for abuse of discretion. *See United States v. Feldman,* 788 F.2d 544, 557 (9th Cir.1986). A district court is accorded wide discretion in making this determination. *Id.; see also United States v. McKoy,* 771 F.2d 1207, 1214 (9th Cir.1985) ("sound discretion").

### A. *Evidence Regarding False Statements to the INS*

■ Lew contends that the district court erred in admitting evidence that he made false statements to the INS. He argues that this was "other misconduct evidence," since he was charged with making false statements to the Department of Labor,

not the INS, and that its probative value was substantially outweighed by the danger of unfair prejudice. *See McKoy,* 771 F.2d at 1214. He argues that the evidence should have been excluded under Rules 404(b) and 403 of the Federal Rules of Evidence.

Lew based his defense in part on the argument that he was simply mistaken as to whether the jobs described on the DOL forms were really available. The evidence of false statements to the INS was relevant because it tended to establish Lew's purpose for submitting the false statements to the DOL, and his knowledge that they were false. Rule 404(b) of the Federal Rules of Evidence does not preclude the use of evidence of other misconduct to show intent, knowledge, or absence of mistake. The evidence was not unfairly prejudicial. ·Admission of this evidence was not an abuse of discretion.

### B. *Yolanda Brassell's Testimony*

■ Lew contends that the judge erred in allowing Yolanda Brassell, Lew's former secretary, to testify that it was Lew's practice to violate certain requirements for DOL certification. He argues that because Brassell could not connect her testimony to any certain case, it was evidence of "other crimes" and should have been excluded.

The trial judge held that this evidence was relevant to establish Lew's purpose. This was not an abuse of discretion.

## III. LIMITATION OF CROSS–EXAMINATION

■ Lew argues that the court erred by limiting Lew's cross-examination of Shieh–Yu Chen Wu and Chang Lang Liao concerning a real estate deal between Wu and Joshua Chang. Lew contends that this evidence would have impeached Joshua Chang by showing that he had a practice of manipulating aliens. We review a decision to limit the scope of cross-examination for abuse of discretion. *United States v. Bonanno,* 852 F.2d 434, 439 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 812, 102 L.Ed.2d 801 (1989).

This testimony was properly excluded under Rule 608(b) of the Federal Rules of Evidence because it was extrinsic evidence of a specific instance of conduct of a witness offered to attack the witness' credibility.

■ Lew also asserts that the evidence was relevant to show Mrs. Wu's gullibility and potential motivation and bias in testifying for the government. Lew does not say how the evidence of a real estate transaction in which Chang purportedly attempted to manipulate Mrs. Wu would impeach Mrs. Wu with respect to her testimony in Lew's trial.

The district court did not abuse its discretion by limiting cross-examination regarding the real estate deal.

## IV. VOUCHING

■ Lew argues that the prosecution improperly vouched for the credibility of Joshua Chang and Howard Lin by eliciting from them, on direct examination, testimony regarding their agreements to testify truthfully as part of plea bargain and nonprosecution agreements respectively.

Lew did not object to this testimony. Thus, it is reviewed for plain error.

> Under the plain error doctrine, Fed.R. Crim.P. 52(b), we recognize only "those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings,'" and we will reverse "'solely in those circumstances in which a miscarriage of justice would otherwise result.'" We review the alleged error in the context of the entire record to determine whether it rises to the level of "plain error."

*United States v. Wallace,* 848 F.2d 1464, 1473 (9th Cir.1988) (citations omitted) (quoting *United States v. Young,* 470 U.S. 1, 15, 16, 105 S.Ct. 1038, 1046, 1047, 84 L.Ed.2d 1 (1985)).

The *Wallace* court held that it was improper to allow the prosecution to elicit testimony on direct examination regarding the truthfulness requirement of a plea agreement. The court said:

> [t]hough [the witness's] references to her plea agreement do not "portray [the government] as a guarantor of truthfulness" as directly as statements by the prosecutor himself, they suggest that [the witness], who might otherwise seem unreliable, has been compelled by the prosecutor's threats and the government's promises to reveal the bare truth. The implication, moreover, remains that the prosecutor can verify the witness's testimony and thereby enforce the truthfulness condition of its plea agreement.

*Wallace,* 848 F.2d at 1474 (citation omitted) (quoting *United States v. Roberts,* 618 F.2d 530, 537 (9th Cir.1980)). In *Wallace,* in addition to eliciting the testimony of that witness, the prosecutor made references to the plea agreement during his closing argument and rebuttal. The court did not decide whether these incidents together constituted plain error, since it remanded on another issue.

Lew argues that the improper vouching requires reversal because the evidence "in essence, boiled down to a credibility contest of the Government's witnesses, each of whom was impeached on virtually every issue related to the charges."

In addition to Chang and Lin, Yolanda Brassell and several of Lew's alien clients testified at trial. Brassell testified that Lew's practice was to violate requirements for DOL certification. Several aliens testified regarding conversations with Lew about their backgrounds. After these conversations Lew would prepare the Forms–750 describing one of the corporations as being involved in a business related to the alien's background and needing an employee with the alien's qualifications. Many of these forms involved the same companies, and only the nature of the business and needs for employees changed to match the qualifications of the aliens.

In cooperation with the government Mr. Lin, an alien, tape-recorded conversations with Lew. In one of these conversations Lin told Lew that there was a company that would sign the documents but could not pay Lin's salary. Lin told Lew that payroll checks could be issued and cashed

to simulate Lin's employment. After this meeting Lew submitted a Form–750 describing a position with this company.

In light of this other evidence of Lew's guilt on the counts involving false statements to the DOL, the government vouching in this case did not rise to the level of plain error. Furthermore, in *United States v. Shaw*, 829 F.2d 714, 718 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988), we held that the government's statement to the jury in opening argument about the truthfulness requirement of a plea agreement was harmless error where the district court instructed the jury that because the witness was the beneficiary of a plea agreement the jury should view his testimony with greater caution than that of ordinary witnesses. In this case the judge agreed to give an instruction that "[w]ith respect to [witnesses who were testifying pursuant to agreements with the government] you should consider whether and to what extent that testimony may have been influenced by the government's promises or by the grant of immunity. And it is my recommendation that you should look for corroborating circumstances in each case before giving full credibility to such witnesses." Because there was substantial evidence against Lew independent of the credibility of Chang and Lin, and because the judge's instruction "could only be taken by the jury to mean that the credibility of the witness was by no means established by the plea agreement, and that the issue was wholly open for the jury to decide", *Shaw,* 829 F.2d at 718, the vouching was not plain error.

The convictions on the mail fraud counts are REVERSED. The convictions on the false statement counts are AFFIRMED.