UNITED STATES of America, Plaintiff,

v.

Vincent J. DI GIROLAMO and Ellen A. Di Girolamo, Defendants.

No. CR 91–20071 JW.

United States District Court, N.D. California.

Dec. 4, 1992.

Jeffrey L. Russell, Asst. U.S. Atty., San Jose, CA, for plaintiff.

Neil F. Horton, Johnston, Horton & Roberts, Oakland, CA, for defendants.

## ORDER DENYING MOTION TO DISMISS COUNTS ONE AND TWO OF SUPERSEDING INDICTMENT

WARE, District Judge.

By grand jury indictment dated June 12, 1991, Defendant Vincent J. Di Girolamo

("Mr. Di Girolamo") was charged with two counts of false statement on a tax return, 26 U.S.C. § 7206(1). The January 9, 1992 superseding indictment charged Mr. Di Girolamo with four counts, and Ellen A. Di Girolamo ("Mrs. Di Girolamo") with two counts of false statement on a tax return, 26 U.S.C. § 7206.

Before the Court is Mr. Di Girolamo's motion entitled Motion to Dismiss Counts One and Two, For Election of Trial on Separate Counts, or to Exclude Evidence. In that motion, Di Girolamo argues 1) the conduct set forth in Counts One and Two of the superseding indictment is not criminal, 2) pursuant to Fed.R.Crim.P. 14, the government must elect to proceed to trial either on Counts One and Two or on Counts Three and Four—alternatively, defendants are entitled to separate trials, one on Counts One and Two, and the other on Counts Three and Four—and 3) pursuant to Fed.R.Evid. 403, the Court should exclude all evidence of Mr. Di Girolamo's alleged payments to John Warner or Sparta Enterprises.

GOOD CAUSE appearing, and as set forth herein, the motions are DENIED.

## I. FACTUAL BACKGROUND

Mr. Di Girolamo was the President of Top Line Services, Inc. ("Top Line"), a painting contractor. As a painting contractor, Top Line Services sought and obtained painting contracts from, *inter alia*, First Nationwide Savings. First Nationwide Savings would award painting contracts to the lowest bidder in a sealed bidding process.

During 1983 and 1984, Mr. Di Girolamo allegedly made payments to John Warner ("Warner"), an employee of First Nationwide Savings, and to Sparta Enterprises ("Sparta"), an alter ego of Warner, as kickbacks or bribes. In exchange for these payments, Warner would provide Top Line with the information regarding the low bid, and Top Line could circumvent the bidding process.

Count One of the superseding indictment charges that on or about June 12, 1985, Mr. Di Girolamo signed a corporate tax return for the calendar year 1984, in which Top Line deducted $9,326 in kickbacks as cost of goods sold.

Count Two of the superseding indictment charges that on or about June 20, 1985, Mr. Di Girolamo signed an amended corporate tax return for the calendar year 1983, in which Top Line deducted $18,948 in kickbacks as an expense.

Both of Top Line's tax returns in question were allegedly executed by Mr. Di Girolamo under penalty of perjury.

Counts Three and Four name both Mr. Di Girolamo and Mrs. Di Girolamo, and address their joint individual tax returns for the same calendar years.

Count Three alleges that in March 1987, defendants executed a joint return for the calendar year 1983, which 1) indicated a Net Operating Loss Carryover of $117,090 when they were not entitled to a net operating loss carryover in any amount, and 2) omitted income from the proceeds of the sale of World Fish Company as well as from the sale of their personal residence, totalling $14,000, which they failed to report.

Count Four charges that in March 1987, defendants executed a joint return for the calendar year 1984, in which the Defendants 1) claimed a business loss of $63,125, when the Defendants were only entitled to claim a loss of $34,760 2) claimed a Net Operating Loss Carryover of $94,758 when they were not entitled to a net operating loss carryover in any amount, and 3) failed to report income in the form of diverted corporate receipts in the amount of at least $4500.

## II. MOTION TO DISMISS COUNTS ONE AND TWO

For purposes of this motion, the parties agree that Mr. Di Girolamo paid a total of $28,274 to Warner and Sparta in exchange for the low bid information. Using that information, Top Line would submit the low bid and receive the painting contracts. Mr. Di Girolamo deducted $18,948 as an expense in Top Line's 1983 corporate re-

turn, and $9,326 as cost of goods sold in Top Line's 1984 return.

■ A conviction for violating Section 7206(1) requires that the defendant willfully make and subscribe to any return which he does not believe to be true and correct as to any material matter. To prove willfulness in a criminal tax case, the government must prove that the law imposed a duty on the defendant, that the defendant knew of the duty, and that the defendant nonetheless voluntarily and intentionally violated that duty. *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).

The government argues that the payments were proscribed under California law. In the alternative, the government argues that Warner violated the laws of the United States, and that Mr. Di Girolamo knowingly aided and abetted Warner's violation of federal law. Under either theory, the government contends the deductions were clearly proscribed by Section 162(c)(2) of the Internal Revenue Code. Section 162(c)(2) provides, in pertinent part:

> Other illegal payments.—No deduction shall be allowed under subsection (a) for any payment ... made, directly or indirectly, to any person, if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment under any law of the United States or under any law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business....

26 U.S.C. § 162(c)(2) (West 1992 Supp.).

Mr. Di Girolamo contends that the amounts claimed were deductible, and hence there is no crime. In the alternative, he claims that even if the deductions were improper, he could not, under the law existing at the time, have known them to be

improper. Accordingly, he contends that the government can not prove willfulness.

Mr. Di Girolamo relies on the case of *Raymond Bertolini Trucking Co. v. Commissioner of Internal Revenue,* 736 F.2d 1120 (6th Cir.1984), ("*RBTC*"), a civil case, in support of his argument that payments made for lawful commercial bribery [1], such as the payments alleged here, are deductible. The *RBTC* decision was premised on the finding that "[i]n making these payments, RBTC did not violate either Ohio state law or federal law, and was not by virtue of the payments subject to loss of any license or privilege to engage in its trade." *RBTC,* 736 F.2d at 1122.

The question before the Court in this case is not determined by Ohio law, but by the laws of the United States and of the State of California. Nevertheless, *RBTC* is clearly analogous in holding that the kickbacks, to the extent that they are not proscribed by law, are deductible under Section 162 as necessary business expenses.

The motion raises three important questions: 1) did Mr. Di Girolamo's payments to Warner aid and abet a violation of federal law, 2) were the kickbacks made in violation of California law for purposes of Section 162(c), and, 3) if the payments themselves were lawful, are payments made as part of a lawful kickback scheme properly deducted as necessary business expenses.

The Court begins its query by perusing salient federal law.

## A. DID MR. DI GIROLAMO'S PAYMENTS TO WARNER AID AND ABET WARNER'S VIOLATION OF FEDERAL LAW

Irrespective of the legality of Mr. Di Girolamo's payments to Warner under California law, the government asserts, the payment scheme violated federal law. Warner was convicted, *inter alia,* of five

---

1. "Commercial bribery may be defined as the offer of consideration to another's employee or agent in the expectation that the offeree will, without fully informing his principal, be sufficiently influenced by the offer to favor the offeror." 2 Callmann, Unfair Competition, Trademarks and Monopolies § 12.01 (2d ed.1985).

Commercial bribery may assume any form of corruption where an employee is induced to act against the best interests of his employer or to compete unfairly with a competitor. *Freedman v. United States,* 437 F.Supp. 1252, 1260 (N.D.Ga.1977).

counts of mail fraud, 18 U.S.C. § 1341, and one count of embezzlement from a savings and loan, 18 U.S.C. § 657. The government argues that by making the payments, Mr. Di Girolamo aided and abetted Warner within the meaning of 18 U.S.C. § 2. Moreover, the government claims that Warner could have been convicted of additional embezzlement counts for the bribes paid by Di Girolamo. It further contends that Di Girolamo necessarily aided and abetted Warner in those uncharged acts of embezzlement.

1. Mail Fraud under 18 U.S.C. § 1341

■ Warner was convicted of five counts of mail fraud. 18 U.S.C. § 1341. The government contends that Mr. Di Girolamo aided and abetted the scheme through the payment of commercial bribes. *See United States v. Kenner*, 354 F.2d 780, 785 (2d Cir.1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966) (the payor of a bribe can, *per se*, be an aider and abettor).

Mr. Di Girolamo contends that because Warner could not, today, be convicted for mail fraud for his acts in furtherance of the kickback scheme, he (Di Girolamo) cannot be convicted of aiding and abetting Warner to commit mail fraud.

At the time of the acts, 18 U.S.C. § 1341, the mail fraud statute, read, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, ... for the purpose of executing such scheme ... [takes or receives] any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

In *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the Supreme Court held that the mail fraud statute does not reach schemes to defraud citizens of their intangible rights to honest government.[2]

In *McNally*, the Supreme Court reversed the conviction of a state official who had used the United States mail in furtherance of a scheme to direct commissions on insurance purchased by the state to an insurance agency in which the Kentucky official had a financial stake. The trial court held that the official defrauded the citizens of the Commonwealth of Kentucky of their intangible rights to honest and impartial government. In reversing the convictions, the Supreme Court held that the mail fraud "had at its origin the desire to protect property rights," *McNally*, 483 U.S. at 358–59 n. 8, 107 S.Ct. at 2881 n. 8, and not ethereal interests.

That same year, in *Carpenter v. United States*, 484 U.S. 19, 25, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987), the Supreme Court clarified the *McNally* decision. The defendant in *Carpenter* had been convicted of aiding and abetting for his role in a scheme to disclose and trade upon information before it was reported in the "Heard On the Street" column, featured on the front page of the Wall Street Journal. The Court found that the Wall Street Journal had a property right in keeping confidential and making exclusive use, prior to publication, of the schedule and contents of the column.

In affirming convictions of aiding and abetting and of mail fraud, the Supreme Court held that while the mail fraud statute is limited in scope to the protection of property rights, the statute did not distinguish between tangible and intangible property rights, but merely distinguished protected property rights from such unprotected, intangible and ethereal rights as the right to honest and impartial government. *Carpenter v. United States*, 484 U.S. at 25–27, 108 S.Ct. at 320–21.

In a line of post-*McNally* decisions, the Ninth Circuit has held that a necessary element of a valid conviction for mail fraud is the intent to obtain money or property *from one who is deceived*. The missing

---

**2.** Congress legislatively overturned *McNally*, as part of the Anti–Drug Abuse Act of 1988, by amending the statutory definition of "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

element in *McNally* was that the money was not received from the party who was deceived—the government.

In *United States v. Bonallo*, 858 F.2d 1427 (9th Cir.1988), a bank employee was convicted of bank fraud for making automatic teller withdrawals and then altering the computer records so that the withdrawals would be charged to the accounts of other customers rather than his own. On appeal, *Bonallo* argued, *inter alia*, that the intent was to deceive the bank, but obtain money from the customer accounts. *Id.* at 1434 n. 9. The court rejected the argument, noting that banks reimburse the accounts of customers who have been wrongly charged. *Id.* Upon making that observation, the court determined that the specific intent element which was missing in *McNally* was not missing in *Bonallo*, and the conviction was affirmed.

In *United States v. Lew*, 875 F.2d 219 (9th Cir.1989), the Ninth Circuit reversed the mail fraud conviction of an immigration attorney who had made false statements to the Immigration and Naturalization Service. The government theorized that the attorney accepted money from clients, and made misrepresentations to the government. On appeal the Court found that, much like *McNally*, the conviction could not stand because the party deceived, the government, was not the party from whom Lew had received his money. *United States v. Lew*, 875 F.2d at 222.

Like *McNally* and *Lew*, the instant case has a missing element, as the kickback money was not received from the party Warner deceived, First Nationwide Savings, but was paid to Warner by Di Girolamo himself.[3] An employee retaining a bribe or kickback does not divert any money intended for the employer. *United States v. Holzer*, 840 F.2d 1343, 1346–48

(7th Cir.1988), *accord, United States v. Walgren*, 885 F.2d 1417, 1422 (9th Cir. 1989). Accordingly, First Nationwide Savings did not have an interest in the proceeds from the bribes.

As the government alleges no property right deprivation resulting from the mail fraud scheme, the Court finds that as a matter of law, no claim lies for aiding and abetting Warner to commit mail fraud.

2. Embezzlement from a Savings and Loan

■ The government argues that the money Di Girolamo paid to Warner rightfully belonged to First Nationwide Savings. Accordingly, they argue that in keeping the money, Warner embezzelled the funds from First Nationwide Savings. Warner could not have embezzled this money without Di Girolamo having paid it.

Necessarily, the government contends, Di Girolamo aided and abetted Warner to embezzle the money. The problem with the government's theory is, as the Court has previously found, First Nationwide Savings did not have an interest in the proceeds of the bribes. *See United States v. Holzer*, 840 F.2d at 1346–48.

Accordingly, the Court finds Mr. Di Girolamo's role in the payment scheme did not violate federal law.

B. WERE THE KICKBACKS PROSCRIBED UNDER CALIFORNIA LAW

■ As the government points out, the relative statutes to consider are the Cartwright Act, Cal.Bus. & Prof.Code § 16700, *et seq.*, and the Unfair Practices Act, Cal. Bus. & Prof.Code § 17000 *et seq.* The government contends that the payments ran

---

3. At least one circuit would hold the payments to belong to First Nationwide Savings, and accordingly, would find the element present. In *United States v. Runnels*, 833 F.2d 1183 (6th Cir.1987), *vacated*, 877 F.2d 481 (1989), the Sixth Circuit held that the defendant, a union administrator, had a fiduciary duty to the union members that he breached when he took the bribes, and therefore a constructive trust was impressed on the proceeds of the bribes at the moment of receipt. By retaining the money, the defendant deprived the union of its property right to the corpus of the trust. A number of circuits have departed from *Runnels. See, e.g. United States v. Ochs*, 842 F.2d 515, 525–27 (1st Cir.1988) (the expansive view of property protected by the mail fraud statute adopted in *Runnels* is irreconcilable with the basic holding of *McNally.*)

afoul of both of the California statutory schemes.

The Cartwright Act, Cal.Bus. & Prof. Code § 16700, *et seq.*, is a statutory antitrust scheme modelled after the Sherman Act.

Cal.Bus. & Prof.Code § 16720 defines a trust as any "combination of capital, skill or acts by two or more persons for any of the following purposes: (a) To create or carry out restrictions in trade or commerce...." The criminal penalties set out for an individual convicted of antitrust violations under the Cartwright Act include a fine of not more than $100,000, or imprisonment in a state prison for not more than three years, or imprisonment in a county jail for not more than one year, or by both a fine and imprisonment. Cal.Bus. & Prof. Code § 16755.

The government encourages the Court to broadly construe the proscriptions of the Cartwright Act, so as to consider Mr. Di Girolamo's payments to Warner as an antitrust violation. Moreover, the government argues that bid-rigging is, *per se* violative of both the Cartwright Act and the Sherman Act.[4] However, as the government concedes, there are no California cases clearly defining bid-rigging under the Cartwright Act.

The overwhelming majority of cases under the Cartwright Act involve price-fixing, market divisions and concerted refusals to deal (group boycotts). *See* 13 Julian O. von Kalinowski, Antitrust Laws and Trade Regulation § 137.01 (1992). There are no reported criminal cases addressing bribery, or bid-rigging on similar facts, under the Cartwright Act. Since the Court finds an alternative basis for its decision, it need not decide whether the Cartwright Act provides a basis for prosecution.

Alternatively, the government argues that the Unfair Practices Act, Cal.Bus. & Prof.Code § 17000, *et seq.*, proscribes certain forms of bribery and bid-rigging.[5] In particular, the government relies upon Cal. Bus. & Prof.Code § 17045, which proscribes specified unfair practices and provides:

> The secret payment or allowance of rebates, refunds commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful.

Although there are no reported cases under the Unfair Practices Act which are similar to the case at bench, nevertheless the Court finds that the Unfair Practices Act is generally enforced. The requirement that a state law be generally enforced is intended to prevent criminal liability based upon archaic, unheard of laws. A defendant would be deprived of due process of law if subjected to criminal liability on the basis of antiquated statutes.

The Unfair Practices Act has been a feature of California law since 1941. Its applicability is not dependent upon the existence of a series of reported cases where it has been used under facts similar to the case before the Court, as long as it clearly prohibits the conduct at issue and is otherwise generally enforced.

---

**4.** The government cites a case in which the California Court of Appeal held that bid-rigging is prohibited by both the Cartwright Act and the Sherman Act. *People v. Santa Clara Valley Bowling Proprietors' Assn.*, 238 Cal.App.2d 225, 232, 47 Cal.Rptr. 570, 572 (1st Dist., 1965).

The scheme in *Santa Clara Valley Bowling Proprietors' Assn.* is markedly different from the facts before this Court. *Santa Clara Valley Bowling Proprietors' Assn.* concerned owners of bowling alleys, who banded together to take business from competing owners that did not belong to their association, through the use of a secondary boycott. The scheme was rather similar. They denied admission to a league to any bowler who engaged in league play at bowling alleys which did not belong to the association.

That differs from this case, where a commercial bribe was paid to an employee of a customer, in order to gain more favorable treatment in the bidding process.

**5.** The criminal penalties set out for an individual convicted of such conduct include a fine of not less than $100 nor more than $1,000, imprisonment not exceeding six months, or by both a fine and imprisonment. Cal.Bus. & Prof.Code § 17100.

The government claims Mr. Di Girolamo violated Section 17045 by making secret payments to Warner. Section 17045 prohibits "[t]he secret payment ... to the injury of a competitor and where such payment tends to destroy competition."

The Court finds that Di Girolamo's alleged payment of bribes to Warner falls within the scope of the Unfair Practices Act. It was the secret payment of bribes which destroyed all competition in the letting of painting contracts for First Nationwide Savings.

## C. WERE THE LAWFUL KICKBACKS DEDUCTIBLE AS A COST OF GOODS SOLD

The last question posed by this case, i.e. whether the bribes are deductible, is obviated by the Court's conclusion that the bribes are unlawful under California law. Bribes or kickbacks are not lawfully deductible when unlawful under the laws of the State of California. Accordingly, the motion to dismiss Counts One and Two of the Superseding Indictment is DENIED.

## III. OTHER MOTIONS

Defendants have made two motions which remain before the Court. Pursuant to Fed.R.Crim.P. 14, defendants move either to sever for trial Counts One and Two from Counts Three and Four, or alternatively for the prosecutor to elect between Counts One and Two and Counts Three and Four. Additionally, pursuant to Fed.R.Evid. 403, defendants move to exclude all evidence of the kickback scheme from trial. The gravamen of both motions is that evidence of the kickback payments would prejudice the trial on Counts Three and Four.

The government opposes both motions on the grounds that while evidence of the kickback scheme is needed to prove Counts One and Two, judicial economy requires a single trial on all counts.

## A. RULE 14 MOTION

█ If the substantial rights of the accused will be prejudiced by submission to the same jury of more than one distinct felony charge among two or more counts of the same class, the court can compel the prosecutor to elect which counts to try, *Pointer v. United States*, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894), or may order a separate trial of individuals or offenses. *United States v. Wilson*, 434 F.2d 494 (D.C.Cir.1970). *See, generally*, Fed. R.Crim.P. 14.

Analysis under Rule 14 begins upon a showing of prejudice. *See, e.g. United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980), *citing United States v. Martinez*, 486 F.2d 15, 22 (5th Cir.1973), *and United States v. Echeles*, 352 F.2d 892, 896 (7th Cir.1965) (to prevail in a motion for severance under Rule 14, the defendant must show prejudice of such magnitude that the defendant would be denied a fair trial.) Defendants speculate that, because a jury will find the issue of bribery immoral, they will be unable to follow the Court's instructions and to separate the evidence with respect to each count.

The Di Girolamos fail to show how they will be prejudiced by a joint trial, or that the potential for prejudice can not be cured with a jury instruction. A premise underlying all jury trials is that jurors can and do follow their instructions. *See Francis v. Franklin*, 471 U.S. 307, 325 n. 9, 105 S.Ct. 1965, 1977 n. 9, 85 L.Ed.2d 344 (1985).

The Court finds that instructions to the jury to view the evidence separately as to each count in which a defendant is charged, and to view the evidence separately as to each defendant charged, is sufficient to safeguard the Di Girolamos from any potential evidentiary spillover. *See, e.g. United States v. Silvestri*, 790 F.2d 186 (1st Cir.), *cert. denied*, 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986).

As defendants have not shown prejudice, the motion is DENIED WITHOUT PREJUDICE. Defendants may again move for a separate trial on Counts One and Two, pursuant to Fed.R.Crim.P. 14. The Court will consider the motion if defendants can demonstrate actual prejudice will result, from admitting evidence of the kickback

payments, at a joint trial with respect to defendants and to counts.

## B. MOTION TO SUPPRESS

█ Mr. Di Girolamo argues that the jury will find the kickbacks immoral. Moreover, the Di Girolamos argue that since 1984, several major scandals involving financial wrongdoing resulted in a strong public reaction against financial wrongdoing. The Di Girolamos failed to submit either evidence or argument to suggest what scandals they are referring to or how these scandals might change the atmosphere in which they may be tried.

Under Fed.R.Evid. 403, this Court has wide discretion to determine whether the prejudicial effect of evidence so far outweighs its probative value that the evidence should be excluded. *See, e.g., United States v. Martin,* 599 F.2d 880 (9th Cir.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 2408, 60 L.Ed.2d 1067 (1979). Exercising this discretion requires the Court to weigh the probative value against the prejudicial impact. Neither the government, nor the defendants, have addressed either the probative value or the prejudicial impact of admitting evidence of the bribes.

As defendants have not shown prejudice, the motion is DENIED WITHOUT PREJUDICE.

## IV. CONCLUSION

1. Defendants' Motion to Dismiss Counts One and Two of the Superseding Indictment is DENIED;

2. Defendants' Motion to Sever or for Election of Counts is DENIED WITHOUT PREJUDICE;

3. Defendants' Motion to Exclude Evidence is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.