**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10568 |
| Plaintiff - Appellee, | D.C. No. 1:09-cr-00129-JMS-1 |
| v. | |
| KEVYN PAIK, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted February 16, 2012
Honolulu, Hawaii

Before: GOODWIN, TROTT, and MURGUIA, Circuit Judges.

Kevyn Paik appeals his convictions of two counts of mail fraud in violation

of 18 U.S.C. § 1341, two counts of wire fraud in violation of 18 U.S.C. § 1343, and

one count of criminal conflict of interest in violation of 18 U.S.C. § 208.  Because

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

the facts are known to the parties, we recount them here only as necessary to explain our decision. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. There was sufficient evidence to show that Paik and his co-defendant took great care to conceal Paik's involvement in the Pond C subcontract not only from Ducks Unlimited (DU), but also from the U.S. Fish & Wildlife Service (FWS). Refuge manager Michael Hawkes testified that if Paik's name had appeared on any invoice from DU, FWS would not have approved reimbursement to DU. Given the defendants' multiple attempts to obtain subcontracts for various projects at the Refuge, the jury reasonably inferred that FWS's continued unawareness of Paik's involvement was essential to his ongoing fraudulent scheme and that Paik therefore intended "to obtain money or property from the one who [was] deceived." United States v. Lew, 875 F.2d 219, 221 (9th Cir. 1989). The prosecution also sufficiently proved that Paik knew FWS would reimburse DU for its payment to Paik's co-defendant on the subcontract; thus, when Paik "falsified the [bids] . . . , he was effectively harming the [United States]." United States v. Bonallo, 858 F.2d 1427, 1434 n.9 (9th Cir. 1988).

2. For the same reasons, sufficient evidence supports the conclusion that the wire transfers from FWS to DU constituted "a step in the plot" and therefore furthered Paik's fraudulent scheme. Schmuck v. United States, 489 U.S. 705, 711

(1989) (internal quotation marks and alteration omitted). The jury could have reasonably inferred that Paik's ongoing fraudulent scheme depended on the FWS's unawareness and did not "reach fruition" until after the wire transfers occurred. Id. at 712.

3. We need not decide if the mail fraud and wire fraud statutes require an intent to harm because even if such an intent is required, the prosecution sufficiently proved that intent. The evidence shows that Paik's deceitful conduct "depriv[ed] the [FWS] of the opportunity to weigh the true benefits and risks of the transaction." United States v. Treadwell, 593 F.3d 990, 997 (9th Cir. 2010).

4. With respect to the wire transfers from FWS to DU, Paik knew his fraudulent scheme involved a straw contractor in Hawaii, a general contractor based on the mainland, and the U.S. government. Thus, the jury reasonably concluded that Paik foresaw the use of the wires. See United States v. Cusino, 694 F.2d 185, 188 (9th Cir. 1982) ("One 'causes' use of the mails or wire communications where such use can reasonably be foreseen, even though not specifically intended."); see also United States v. Goodson, 155 F.3d 963, 967 (8th Cir. 1998) ("In today's technology-oriented environment, electronic money transfers are a common and often indispensable part of ordinary business activities.").

3

5.      Sufficient evidence also supports the jury's finding that Paik violated the criminal conflict of interest statute by participating "personally and substantially as a Government officer or employee" in a matter in which he had a financial interest.  18 U.S.C. § 208(a).  Mike Mitchell of FWS testified that Paik was the primary FWS employee assisting DU and that he "was the on-the-ground person who was overseeing the construction."  The prosecution proved Paik was acting as an FWS employee while working with DU on the Pond C subcontract.

6.      There was no plain error in the conflict of interest jury instruction because it did not constructively amend the indictment.  A constructive amendment occurs when "a complex of facts presented at trial [is] distinctly different from those set forth" in the indictment or where "the crime charged in the indictment was substantially altered at trial."  United States v. Shipsey, 363 F.3d 962, 974 (9th Cir. 2004) (internal quotation marks and alterations omitted).  Here, however, the indictment, the evidence, and the instruction were not substantially different and involved only a single set of facts -- Paik's fraudulent scheme to obtain money from the United States by helping his co-defendant obtain and perform the Pond C subcontract.

AFFIRMED.