CHARLES J. AND SHIRLEY J. DELOREAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MICHAEL S. AND JODY ANN SANDRIDGE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
DeLorean v. Commissioner
Docket Nos. 25511-92, 25839-92[1]
United States Tax Court
T.C. Memo 1995-287; 1995 Tax Ct. Memo LEXIS 290; 69 T.C.M. (CCH) 3027; June 27, 1995, Filed *290 Decision will be entered under Rule 155. For petitioners: David J. Lewis, Robert W. Malone, and Mark J. Skakun. For respondent: Dawn M. Krause and Jack E. Prestrud. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Charles and Shirley DeLorean
Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1982
$ 2,883
- 0 - - 0 -
- 0 -
1985
160,493
- 0 - - 0 -
- 0 -
1986
252,510
$ 12,626
[1]
$ 22,464
Michael and Jody Ann Sandridge
Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
1986
$ 9,646
$ 482
[2]
The issues for decision are: 1. Whether Charles J. DeLorean's payments to DeLorean Cadillac, Inc. (the corporation), which he contends he made in 1986 and 1987, are deductible under section 162 or are nondeductible contributions to capital. We hold that these payments are deductible business expenses under section 162 in 1986 and 1987. 2. Whether Jody Ann Sandridge *291 (Sandridge) had a distributable loss from the corporation in 1986. We hold that she did not. 3. Whether Sandridge realized gain from the sale of her stock in the corporation in 1986. We hold that she did. The Sandridges concede that they are liable for the additions to tax under section 6653(a) (1) (A) and (B) for 1986. The DeLoreans concede that they are liable for the additions to tax under sections 6653(a) and 6661(a) for 1986. References to petitioners are to the DeLoreans and the Sandridges. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners resided in Medina, Ohio, when they filed the petitions in these cases. 2. DeLorean Cadillac
The corporation was a Cadillac dealership in Lakewood, Ohio, from 1967 to 1987. It was incorporated in Ohio on October 26, 1967. It elected subchapter S status for Federal tax purposes, effective January 1, 1973, and during the years in issue. Charles J. DeLorean (DeLorean) and Motors Holding Division of General Motors Corp. *292 formed the corporation. Motors Holding Division helped good dealer candidates who did not have enough money to buy dealerships. Motors Holding Division owned all of the voting stock of the corporation from October 26, 1967, until DeLorean bought the stock in 1969. On February 10, 1970, DeLorean was the sole shareholder of the corporation. From 1978 to 1986, the stock of the corporation was owned as follows: Ownership percent
1981 yearend basis
Charles J. DeLorean
30.4
$ 36,959
Mark C. DeLorean
25.2
36,765
Jody Sandridge
22.2
30,375
Grant C. DeLorean
22.2
30,375
Jody Sandridge and Grant and Mark DeLorean are DeLorean's children. DeLorean began to transfer stock to his children in the early 1970's. On December 31, 1981, DeLorean had a $ 36,959 basis and Sandridge had a $ 30,375 basis in the stock of the corporation. On December 31, 1986, DeLorean paid $ 25,600 to both Sandridge and Grant DeLorean to buy their stock. 3. DeLorean's Compensation Arrangement
On February 10, 1970, DeLorean and the corporation agreed to his base salary ($ 90,000) and a formula to compute his bonus based on a percentage of corporate net income (1970 agreement). From 1970 to *293 1979, the corporation paid DeLorean a $ 90,000 base salary. DeLorean and the corporation renewed the compensation agreement in 1980 for another 10 years (1980 agreement). In 1980, the corporation raised DeLorean's base salary to $ 120,000. DeLorean's base salary plus bonus was based on $ 209,000 in 1971 dollars adjusted based on changes in the consumer price index (CPI) for Cleveland or "all city" urban wage earners. In 1986 the corporation paid DeLorean $ 593,459 ($ 120,000 base salary plus a $ 473,459 bonus). In 1987 the corporation paid DeLorean a salary of $ 120,000. DeLorean received bonuses under the 1970 agreement as follows: 1970
$ 58,420
1971
125,000
1972
77,367
1973
241,299
1974
203,407
1975
107,019
1976
55,382
1977
140,000
1978
251,000
1979
274,130
Total
1,533,024
DeLorean received bonuses under the 1980 agreement as follows: 1980
$ 275,598
1981
219,524
1982
365,145
1983
383,985
1984
556,940
1985
467,206
1986
473,459
Total
2,741,857
4. DeLorean's Agreement To Repay Corporate Losses
As part of the 1970 agreement, DeLorean agreed to forgo or disclaim bonuses in years after the corporation had sustained a net operating loss *294 until the corporation recouped its loss. The minutes of the February 10, 1970, board of directors meeting state: [DeLorean] * * * agreed to guarantee the corporation against net operating losses by either a repayment or the disclaimer of all rights for any bonuses for subsequent years until the net operating loss of the corporation had been recouped.
Under both the 1970 and 1980 agreements, DeLorean agreed to repay any corporate losses as part of his compensation plan, which was intended to motivate him to effectively manage the corporation's business. Under the 1980 agreement, DeLorean agreed to repay the amount of loss to the corporation rather than to forgo future bonuses if the corporation had a loss. The corporation reported net income or loss as follows: 1982
- 0 -  1983
($ 10,317)
1984
n/a  [1] 1985
108,090 1986
- 0 -  1987
- 0 -  In 1982, DeLorean repaid $ 212,804 to the corporation under the 1980 agreement. In 1983, DeLorean repaid $ 78,513 to the corporation under the 1980 agreement. The corporation reported the sum of the 1982 and 1983 payments ($ 291,317) as other income from "Salary *295 Repayment Plan" on its 1982 return. In 1984, DeLorean repaid $ 10,317 to the corporation under the 1980 agreement. Because the 1984 corporate return is not in the record, we do not know if the corporation had losses. In 1984, the corporation incorrectly computed DeLorean's bonus and overpaid him by $ 194,386. In 1985, DeLorean repaid that amount to the corporation. The corporation included that amount in income on its 1985 return. DeLorean repaid $ 473,459 to the corporation under the 1980 agreement by check dated December 31, 1986. The corporation negotiated the check on April 3, 1987. The corporation included the $ 473,459 in other income on its 1986 return. DeLorean lent the corporation about $ 2,150,000 in 1987. DeLorean reported on his 1987 tax return that the corporation paid him interest income of $ 168,000. In 1988, DeLorean repaid $ 1,184,133 to the corporation under the 1980 agreement by reducing the shareholder's loans payable account by that amount. The corporation included that amount as income on its 1987 return. 5. Weaver's Embezzlement of Corporate Funds
In June 1987, the corporation hired Terry Dawson (Dawson), of Dawson & Dawson, Certified Public Accountants, *296 to determine whether its books were accurate. Dawson discovered that Thomas Weaver (Weaver), the corporation's treasurer, had embezzled about $ 1.5 million from the corporation. Dawson told the corporation's board of directors the amount of the loss in September 1987. As treasurer, Weaver kept the corporate minutes books. Weaver destroyed or removed many of the corporate books and records, including the book which contained the minutes for the meeting in which the 1980 agreement was adopted. Weaver was convicted of theft for embezzling cash and property from the corporation. The corporation obtained a civil default judgment against Weaver on June 23, 1992, on the chance that it might later become collectible. The corporation deducted $ 820,844.47 in embezzlement losses for 1987. The judgment against Weaver was uncollectible in 1987. The corporation filed an insurance claim in 1987 for its embezzlement losses. The insurance company denied the claim in 1987. Two years later, the corporation filed a second claim, and it received $ 100,000 in insurance proceeds in 1990 for the embezzlement. OPINION 1. Whether DeLorean's Payments Were Contributions to Capital
a. Was a Compensation *297 Agreement in Effect in 1986 and 1987 Between DeLorean and the Corporation Which Required DeLorean To Repay Corporate Losses? Respondent argues that petitioners did not establish that a compensation agreement requiring DeLorean to repay corporate losses from his bonuses was in effect in 1986 and 1987. Respondent maintains that there is no documentary evidence that DeLorean and the corporation made a compensation agreement in 1980. Respondent contends that DeLorean's testimony about the new agreement was self-serving and that his actions did not comport with the alleged terms of the new agreement. We disagree. DeLorean and Dawson testified credibly about the existence and terms of the 1980 agreement. DeLorean's payment of amounts generally corresponding to the amount of corporate losses during the 1980's corroborates his testimony. The existence of the 1970 agreement and the conduct of the parties after 1980 suggests that they made a new agreement in 1980. DeLorean reasonably could not produce the corporate minutes evidencing the 1980 agreement because Weaver had destroyed them. Petitioner's expert on management and compensation practices of automobile dealerships, Walter L. Hall *298 (Hall), testified that DeLorean's incentive-based compensation agreements were consistent with industry practice. He stated that DeLorean's agreement to repay bonuses was typical for auto dealerships. Hall's testimony supports DeLorean's description of the 1980 agreement. Respondent argues that DeLorean's actions were not consistent with the terms of his employment agreements. For example, DeLorean deducted a $ 99,481 repayment in 1975 (under the 1970 agreement), even though the corporation had no losses in that year or any earlier year. In 1985, DeLorean deducted a $ 194,386 repayment although the corporation had no losses in 1984 or 1985. Respondent contends that DeLorean mismatched his bonuses and repayments and that he offered no records of any prior bonuses paid or repaid. DeLorean did not always follow the exact terms of the 1980 agreement. We believe respondent overstates the significance of these occasional departures from the terms of the agreement. As the Court observed in Levenson & Klein, Inc. v. Commissioner, 67 T.C. 694, 714 (1977) (quoting Reub Isaacs & Co. v. Commissioner, 1 B.T.A. 45, 48 (1924)): "Closely *299 held corporations, as is well known, often act informally, 'their decisions being made in conversations, and oftentimes recorded not in minutes, but by action.'" Respondent notes that, although Hall testified that the compensation practices in 1986 and 1987 differed from those applicable under the 1970 compensation agreement, he said nothing about a later or "new" compensation agreement. We do not believe that Hall's failure to refer to a 1980 agreement means that there was none. Rather, we think Hall did not view the difference between the two agreements as significant. Respondent contends that DeLorean's 1987 payment was not made under a contractual agreement but was done by DeLorean voluntarily so that the corporation could avoid bankruptcy. Respondent also argues that DeLorean's deduction of large loss repayments transferred the entire corporate loss to himself, while the tax burden was allocated to all of the shareholders in gain years. Respondent's claim that the corporation was on the verge of bankruptcy is pure speculation. Dawson testified credibly that the corporation did not need DeLorean's bonus repayment to continue in business. Even if it were true, DeLorean might *300 be required to repay the bonuses as fraudulent conveyances. See Ohio Rev. Code Ann. sec. 1701.95(D) (Anderson 1992). DeLorean agreed to repay corporate losses as an incentive to motivate him to effectively manage the corporation; he did not do so for tax purposes. Although his deduction of repayments transferred the corporate loss to himself, in the loss years before 1987, DeLorean's repayments had the effect of reducing the bonuses he had been paid; the corporation would not have had a loss if it had not paid him such a large bonus. DeLorean's repayment of the corporate losses resulting from Weaver's 1987 embezzlement did not transfer losses away from his children (the other shareholders) because he and Mark DeLorean wholly owned the corporation beginning in 1987. In 1988, Mark DeLorean succeeded DeLorean as corporation president and agreed to the same loss repayment arrangement. Respondent disputes DeLorean's claim that his compensation under the 1980 agreement was based on the CPI. Respondent points out that the CPI increased steadily from 1979 to 1987, but DeLorean's bonuses decreased from 1980 to 1981 and from 1983 to 1984, and that the rate of increase in DeLorean's compensation *301 did not match increases in the CPI. We disagree with respondent's contention because DeLorean's bonuses were limited by the amount of the corporation's income; it could not pay him what it did not have. We conclude that a 1980 compensation agreement was in effect which required DeLorean to repay losses to the corporation for any year in which the corporation had an operating loss. b. Did the 1980 Agreement Require DeLorean To Forgo Future Bonuses or To Repay Corporate Losses? Respondent contends that, even if we find that a binding compensation agreement was in effect between DeLorean and the corporation in 1986 and 1987, the agreement was to forgo future bonuses rather than to repay corporate losses. We disagree. The fact that DeLorean repaid amounts generally corresponding to the amount of corporate losses corroborates his testimony that the 1980 agreement required him to repay corporate losses. We find that the agreement required DeLorean to repay corporate losses. c. Were DeLorean's Payments to the Corporation Made in 1986 and 1987? Respondent argues in the alternative that, even if DeLorean had an agreement to repay corporate losses, he made the payments in 1987 *302 and 1988 rather than in 1986 and 1987. Respondent contends that the corporation computed its gain or loss for 1986 and 1987 after the end of the year, and that it could not do so by December 31 of each year. Petitioners argue that respondent may not first raise this issue on brief. Respondent determined in the notice of deficiency that DeLorean's payments to the corporation in 1986 and 1987 were contributions to the corporation and not repayments under a shareholder agreement. Respondent did not raise a timing issue about the payments. Respondent admitted in the answer that DeLorean paid the corporation $ 473,659 by check in 1986, and denied for lack of knowledge that the corporation reduced its loan payable to DeLorean for the 1987 loss of $ 1,184,133. On March 24, 1994, the parties filed a Stipulation of Issues Outstanding, in which they stipulated the issues remaining after trial. In it, respondent did not raise the issue of the timing of DeLorean's 1986 and 1987 payments to the corporation. Respondent did not amend the answer to raise the timing issue and did not raise this issue at trial. There is nothing in the pleadings, stipulation of outstanding issues, or any other document *303 filed by respondent which raised this issue. We have long held that we will not consider an issue raised for the first time on brief if there is unfair surprise or prejudice to the objecting party. Torres v. Commissioner, 88 T.C. 702, 718 (1987); Seligman v. Commissioner, 84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986). We conclude that DeLorean repaid the corporation's 1986 and 1987 losses in 1986 and 1987. d. Are DeLorean's Payments to DeLorean Cadillac Deductible Under Section 162, or Are They Nondeductible Contributions to Capital? Taxpayers may deduct ordinary and necessary expenses incurred in carrying on a trade or business. Sec. 162(a). Generally, the payment of another taxpayer's expenses is not deductible as business expenses. Welch v. Helvering, 290 U.S. 111, 114 (1933); Lohrke v. Commissioner, 48 T.C. 679, 684 (1967). A taxpayer may deduct expenditures made to protect or promote his own business, even though another person (or entity) originated the transaction which generated the expenditures and the *304 expenditures would have been deductible by that person (or entity) if payment had been made by him. Lohrke v. Commissioner, supra at 684-685, 688; Pepper v. Commissioner, 36 T.C. 886, 894, 896 (1961); Dinardo v. Commissioner, 22 T.C. 430, 437 (1954). An officer-employee may be able to deduct repayments to his or her employer if the repayments are required by a preexisting contract or the corporate bylaws. Oswald v. Commissioner, 49 T.C. 645, 648 (1968). Respondent contends that DeLorean's payments to the corporation are not deductible under section 162 because they were contributions to capital. Interstate Transit Lines v. Commissioner, 319 U.S. 590 (1943); Deputy v. Du Pont, 308 U.S. 488 (1940). Respondent further argues that there was no business purpose for the payments. We disagree. DeLorean made repayments as required by the 1980 agreement to preserve and protect his business as president of DeLorean Cadillac. Oswald v. Commissioner, supra; see Dietrick v. Commissioner, 881 F.2d 336, 339 (6th Cir. 1989), *305 affg. T.C. Memo. 1988-180; Raymond Bertolini Trucking Co. v. Commissioner, 736 F.2d 1120, 1123, 1125 (6th Cir. 1984), revg. T.C. Memo. 1982-643; Lohrke v. Commissioner, supra at 688. DeLorean's repayments also served the business purpose of motivating him to effectively manage the corporation. The fact that his payments matched the amount of the corporate loss suggests that they were required by the agreement and were not capital contributions. Whether an expenditure is ordinary and necessary is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). Ordinary has been defined as normal, usual, or customary, but need not be habitual. Deputy v. Du Pont, supra at 495; Welch v. Helvering, supra at 114. An expenditure is ordinary if it is a current expense. Commissioner v. Tellier, 383 U.S. 687, 689-690 (1966); Raymond Bertolini Trucking Co. v. Commissioner, supra at 1123. There must be a logical connection *306 between a taxpayer's business and an expense for the expense to be deductible. Deputy v. Du Pont, supra at 493, 495-496; Raymond Bertolini Trucking Co. v. Commissioner, supra at 1125; Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 660 (1962). Here, the payments were required by the compensation agreement, and there was a reasonably proximate relationship between the payments and DeLorean's business as president of DeLorean Cadillac. Thus, under Du Pont the payments are ordinary and deductible. Raymond Bertolini Trucking Co. v. Commissioner, supra.We hold that DeLorean's payments to the corporation were ordinary and necessary and therefore were deductible business expenses under section 162. We need not reach petitioners' alternative argument that the payments are deductible under section 165 because of our holding on the section 162 issue. [2]
*307 2. Whether Sandridge Had a Distributable Loss in 1986
Income, loss, and deductions of a subchapter S corporation are taken into account by its shareholders on a pro rata basis. Sec. 1366(a)(1). Respondent contends that whether Sandridge had a distributable loss from the corporation in 1986 depends on whether DeLorean's payments to the corporation in 1986 and 1987 were under a compensation arrangement. [3]
Petitioners claim that she received no distributable loss from the corporation in 1986 because it had no loss that year due to the repayment by DeLorean. We agree. The corporation had zero gain or loss in 1986, and thus had no gain or loss to distribute to its shareholders. *308 Sec. 1366(a)(1). Accordingly, Sandridge had no distributable loss from the corporation in 1986. 3. Whether Sandridge Realized a Gain on the Sale of Her Stock
Items of income increase an S corporation shareholder's basis, and losses or distributions decrease basis. Sec. 1367(a). A shareholder's deduction of her portion of the losses from a subchapter S corporation is limited to the sum of: (a) Her adjusted basis in stock in the corporation and (b) her adjusted basis in any debt owed by the corporation to the shareholder. Sec. 1366(d)(1). Sandridge must establish that her basis in the corporation in 1986 was more than $ 25,600 and that she sustained a loss on the sale of her stock. The parties agree that Sandridge's basis in her stock in the corporation was $ 30,375 on December 31, 1981. Petitioners argue that Sandridge had a $ 58,371 basis on December 31, 1986, and that she lost $ 32,771 on the sale of her stock ($ 25,600 realized minus $ 58,371 adjusted basis). The gain or loss on the sale of property is the amount realized on the sale less the adjusted basis of the property sold. Sec. 1001(a). The only evidence in the record on this issue is Exhibit 45. Exhibit 45 contains *309 no basis information for 1983 or 1985. Without this information, Sandridge has not established her basis on December 31, 1986. Respondent determined that Sandridge had a $ 7,401 basis in the stock on December 31, 1986. Sandridge failed to establish that she had an adjusted basis in stock in the corporation sufficient to offset gain from the sale of her stock in 1986. Accordingly, we sustain respondent's determination on this issue. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for trial, briefing, and opinion.↩
1. Fifty percent of the interest due on $ 89,857.↩
2. Fifty percent of the interest due on $ 8,567.↩
1. The corporation's 1984 return is not in the record.↩
2. Petitioners argued in the alternative that DeLorean may deduct his repayments under sec. 1341. Because of our holding on the sec. 162↩ issue, we need not reach this issue.
3. Petitioners argue that Sandridge's stock basis reflects a zero passthrough from the corporation in 1986. However, if we find that DeLorean's repayment of his bonus in 1986 was not income to the corporation, then Sandridge could deduct a distributable loss from the corporation to the extent of her basis in that year. Sec. 1366(d)(1)↩.